ARMSTRONG, Judge.
In this medical malpractice case, plaintiffs appeal from the trial court’s judgment which found Dr. Billings breached no standard of care and was not negligent in failing to diagnose Alice Barbella’s cancer. Plaintiffs claim that the trial court manifestly erred in dismissing their claims because they sustained their burden of proof under LSA-R.S. 9:2794. We disagree and, therefore, affirm.
On August 27, 1981, Alice Barbella, the mother of the plaintiffs, was involved in an automobile accident in which she lost consciousness for five minutes. She was transported to the emergency room at Tou-ro Infirmary where it was determined that she had sustained four broken ribs and a broken clavicle. She remained at Touro until September 6, 1981, and was then discharged. Her treating physician was Dr. Ogden, a general surgeon. Because her broken clavicle was not healing properly, Dr. Ogden brought Dr. Billings, an orthopedic surgeon, in for a consultation. Due to the findings made by Dr. Billings during this consultation, Barbella was hospitalized on January 10, 1982, for surgery on her clavicle. During this period of hospitalization at Touro which continued until January 20, 1982, Dr. Billings surgically repaired Barbella’s clavicle. An x-ray was taken of her clavicle which disclosed the presence of nodules on her lungs. This x-ray report became a part of her medical record at Touro Infirmary and was viewed by Dr. Billings. At this time, Dr. Billings was only treating Barbella for her orthopedic clavicle problem. Barbella was discharged from Touro Infirmary on January 20, 1982.
Dr. Billings saw Barbella on January 22, 1982, and on February 5, 1982. On February 26,1982, Barbella complained of pain in her midposterior thoracic spine region which increased with activity. Dr. Billings found that her clavicle was progressing well based upon his examination of her x-ray, and he did not discover any tenderness nor any pain that could be produced with deep aspiration.
Dr. Billings saw Barbella on subsequent office visits on March 26, and April 8, 1982. Following the latter visit, Dr. Billings wrote a letter dated April 15, 1982 to Dr. Ogden, detailing her progress and commenting upon her complaints of left tro-chanteric bursitis. Xylocaine and steroid injections were applied, but provided incomplete relief of her symptoms. Thus, he ordered Barbella to return in one month for reinjections if similar complaints were voiced. Thereafter, he saw her on April 30, and May 17, 1982, and she complained of continued left hip pain.
On May 17, 1982, metastic cancer was diagnosed as a possible illness afflicting Barbella. In subsequent hospitalizations, it was discovered that Barbella was suffering from colon cancer on her right side, a particularly difficult cancer to diagnose *847 and one which masks itself in many patients. Barbella subsequently died on January 27, 1983. The death certificate showed the cause of death to be bilateral, bronchopneumonia, metastatic carcinoma of the liver, and osteolytic lesions of the spine.
On January 27, 1983, Barbella’s two children, Nicholas Barbella and Deborah Williams, instituted this wrongful death and survivor action on behalf of their mother. They claimed that Alice Barbella’s extraordinary suffering was directly caused by the professional negligence of Dr. Charles R. Billings and Dr. William Ogden. During the trial stage of this case, the plaintiff’s settled their claims against Dr. Ogden. For oral reasons assigned during the course of the trial, plaintiffs’ claims against Touro Infirmary, Dennis Porch, M.D., Robert Morales, M.D., Daniel Scullin, M.D., and Robyn Hardy, M.D., were dismissed based upon a lack of adequate evidence to establish any breach of a standard of care and/or negligence on their collective or individual part.
On March 19-21, 1990, this matter came up for trial. The trial court issued judgment in favor of Dr. Charles Billings, dismissing plaintiffs’ claims against him. The trial court concluded that Dr. Billings had not breached any standard of care, nor was he negligent in this matter for the following reasons: First, Dr. Billings was only a consulting physician, while Dr. Ogden was her regular physician. Second, the autopsy report confirmed that the nodules discovered on Barbella’s lungs were not cancer related but were instead abscesses. Third, Dr. Hoffman, the plaintiffs’ expert, incorrectly concluded that Dr. Billings should have acted upon seeing the x-ray report of the nodules, as that duty lay with Dr. Ogden. Finally, Dr. Billings’ testimony that a low number for the MCV and MCH on a blood test is not unusual for patients of Barbella’s age was accepted as correct.
From this adverse judgment, plaintiffs devolutively appeal. They argue that Dr. Billings violated the standard of practice by failing to examine x-rays and laboratory test results and act thereon. Plaintiffs contend that Dr. Billings owed Barbella a duty to take reasonable care to avoid acts or omissions which he could have reasonably foreseen would be likely to cause injury to her, unless there is some justification or valid explanation for his behavior. Pitre v. Opelousas General Hosp., 530 So.2d 1151, 1157 (La.1988).
Plaintiffs claim that Dr. Billings breached his duty to Barbella by failing to inform her of the abnormal x-rays and to seek additional consultation upon these findings. They cite Dowling v. Mutual Life Ins. Co. of New York, 168 So.2d 107 (La.App. 4th Cir.1964), writ den., 170 So.2d 508 (La.1965), which held that a doctor owed a duty to inform the patient of the substance of a radiologist’s warning and that his failure to do so was actionable in tort.
Plaintiffs further argue that Dr. Billings’ role as a consultant does not relieve him of any duty to Barbella. They cite Favalora v. Aetna Casualty and Surety Co., 144 So.2d 544, 551 (La.App. 1st Cir.1962), for the proposition that where a physician fails to exercise reasonable care and diligence along with his best judgment in his application to the patient of the skill he possesses, he is liable when such care is shown to fall below that required by his profession.
As a consultant to Dr. Ogden, plaintiffs claim that Dr. Billings ordered x-rays on Barbella but chose not to read nor act upon them. Also, plaintiffs argue that Dr. Billings operated on and followed Barbella’s care for over five months, but now seeks to avoid any responsibility.
Plaintiffs prima facie case is based upon the testimony of their expert, Dr. Stuart Hoffman, who stated that Dr. Billings breached his duty as a physician to Barbel-la, when he failed to respond to her blood abnormalities and the changes on her chest x-rays. Plaintiffs claim that these errors directly contributed to her injuries. Their claim of breach of duty centers around Dr. Billings failure to address the multiple pulmonary nodules which showed up on her x-rays. Thus, plaintiffs argue, Dr. Billings was guilty of medical malpractice in breaching the standard of care of a physi *848 cian which was causally related to a failure to diagnose Barbella’s cancer.
Dr. Billings responds that the plaintiffs failed to call an orthopedic surgeon to the stand to establish the proper care applicable to him. He claims that this failure was fatally defective to the plaintiffs’ case. Plaintiffs’ expert, Dr. Hoffman’s, sole complaint was that Dr. Billings failed to respond to the pulmonary nodules on the x-ray. Dr. Billings counters that the trial court disregarded Dr. Hoffman’s testimony. He claims that, instead, the trial court adopted his own testimony, distinguishing between his duty as a consulting physician and a primary physician. Dr. Ogden, Bar-bella’s primary physician, called him solely for the purpose of operating on her clavicle. Dr. Hoffman suggested that Dr. Billings should have called for further consultation, but medical protocol requires a primary physician, and not a consultant, to call for additional consultations. Finally, Dr. Billings argues that the Medical Review Panel heard the identical complaints by Dr. Hoffman and unanimously ruled that Dr. Billings complied with the standard of care required of orthopedic surgeons.
In its reasons for judgment, the trial court agreed that Dr. Billings had no duty to act upon the radiologist’s report showing the nodules on Barbella’s lungs. It found that duty belonged to the primary physician, who is under the duty to discharge Barbella from her hospitalization. Dr. Billings testified that it is the responsibility of the primary physician to coordinate activities regarding the patient’s care. Dr. Billings role, as a consulting physician, was confined to a specific area of specialty and treatment. Dr. Billings testified that his focus was the non-union of Barbella’s clavicle and his expertise would not go into that of pulmonary nodules. The trial court further found that the nodules on Barbella’s lungs were not cancer-related. An autopsy revealed no malignancy in Barbella’s lungs at the time of death. These findings are supported by the record.
In order to prove medical malpractice, Pitre, supra., requires evidence of a duty, a breach of that duty, proximate causation and injury. The trial court concluded that Dr. Billings owed no duty to Barbella in regards to acting on the x-ray report showing nodules on her lungs. Thus, the trial court held that the plaintiffs failed to establish any negligence on Dr. Billings part, as he had no duty to act on the x-ray report since he was only a consulting physician.
The cases cited by plaintiffs are not persuasive. In Dowling, supra., the doctor held liable for failure to inform the patient of the results of an x-ray, was the patient’s primary physician. Nor does Favalora, supra., support plaintiffs’ contention that Dr. Billings should not be excused from liability by virtue of his role as a consultant. What Favalora articulated so well is,
[Cjonformity with the standard of care observed by other medical authorities in good standing in the same community cannot be availed of as a defense in a malpractice action when the criterion relied upon is shown to constitute negligence in that it fails to guard against injury to the patient from a reasonably foreseeable contingency.
Favalora at 550. Emphasis added.
Unlike Favalora, there was no showing by plaintiffs that Dr. Billings treatment of Barbella failed to meet the test of reasonable care and diligence required of the medical profession, or that it was faulty or contrary to what members of the profession have been taught in medical institutions of learning. Consequently, the trial court did not manifestly err in finding plaintiffs failed to meet their burden of proving Dr. Billings breached the requisite standard of care and/or was negligent in his care of Barbella.
For the foregoing reasons, we affirm the trial court’s judgment.
AFFIRMED.